Filed 7/13/15  P. v. Wallis CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>NATHAN TIMOTHY WALLIS,<br><br>    Defendant and Appellant. | A140045<br><br>(Contra Costa County<br> Super. Ct. No. 51211994) |

This is an appeal from judgment after a jury convicted appellant Nathan Timothy Wallis of 31 counts of sexual abuse against a 15-year-old minor.  Appellant challenges the judgment on grounds of insufficiency of the evidence to support his conviction on certain counts, improper admission of criminal propensity evidence, and erroneous imposition of multiple punishments for an indivisible course of conduct.  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On April 29, 2013, an amended information was filed charging appellant with the following 32 felony offenses: distributing lewd material to a minor (Pen. Code, § 288.2, subd. (a)) (count one);[1] contacting a minor to engage in lewd behavior (§ 288.3, subd. (a)) (count two); arranging a meeting with a minor to engage in lewd behavior (§ 288.4, subd. (b)) (count three); possession of material depicting a minor engaged in sex conduct (§ 311.11, subd. (a)) (count four); committing a lewd act upon a child aged 14 to 15 (§ 288, subd. (c)(1)) (counts 5, 9, 10, 12, 15, 18, 20, 23, 26, 29 and 31); oral copulation of

_____

[1]    Unless otherwise stated, all statutory citations herein are to the Penal Code.

a minor under the age of 16 (§ 288a, subd. (b)(2)) (counts 6, 11, 13, 16, 21, 24 and 28); sexual penetration of a person under the age of 16 (§ 289, subd. (i)) (counts 7, 19 and 27); and unlawful sexual intercourse (§ 261.5, subd. (d)) (counts 8, 14, 17, 22, 25, 30 and 32). It was further alleged appellant was ineligible for probation. (§ 1203, subd. (e)(4).)

A jury trial began April 29, 2013, at which the following evidence was presented. In the late evening of April 21, 2012, appellant, age 26, met and began chatting with the victim on a social website called "Are You Interested?" Although the victim's website user profile listed her age as 18, she acknowledged to appellant that she attended a local high school and appellant was thereafter able to learn from the school's website that she was a freshman. Ultimately, the victim acknowledged to appellant during their online chat that she was 15 years-old. Appellant responded by asking the victim whether she was "a cop," and, when she replied, "no," he warned her: " 'I don't prey on young girls, you could just leave me alone.' " Nonetheless, they resumed chatting after the victim insisted she was a 15-year-old student, not a police officer.

After several hours of online chatting, appellant arranged to meet the victim to "fool[] around[.]" Appellant thus drove to the victim's Pleasant Hill home sometime after 3:30 a.m. and then took her to his house in Danville, where he lived with his mother.[2] At appellant's house, the pair kissed outside before he carried the victim to the front door. Once inside, they kissed again before removing their clothes. The pair then proceeded to engage in numerous sexual acts in various locations in appellant's house and vehicle until the afternoon of April 25, 2012, when they agreed the victim should leave and she contacted her father for a ride home. These sexual acts included at least eight acts of intercourse, at least ten acts of oral copulation, at least three acts of digital

---

[2]     On the morning of April 22, 2012, the victim's father discovered her missing and her bedroom window open. He immediately called the police to report her missing.

2

vaginal penetration by appellant, one act of digital penetration of her anus by appellant, at least six acts by appellant of touching her breasts, and at least six acts of kissing.[3]

When the victim went home, she left in appellant's house birth control pills and a pair of underwear (as a "remembrance").[4] In addition, she emailed to appellant a photograph of her with her breasts exposed.

In a subsequent recorded police interview, appellant made the following statements. Initially, appellant denied knowing the victim was underage and insisted their physical contact was limited to kissing, touching and cuddling. Later, he admitted they touched each other over their underwear. Ultimately, however, he admitted knowing she was 15 years-old when he first picked her up and having intercourse with her: "She wanted to lose her virginity. [¶] . . . [¶] We had sex probably a total of four times."

Appellant also admitted that he digitally penetrated the victim; that she orally copulated him; that he put his thumb on her anus; and that he orally copulated her. In addition, a police search of appellant's residence revealed hundreds of photographs of under-age girls on his cellular telephone.

Appellant also admitted to police that, when he was 19 years-old, he was convicted of sexual abuse of a minor (hereinafter, Jane Doe) under sections 288a, subdivision (b)(1), and 261.5, subdivision (c). Specifically, in September 2004, appellant went with a friend to pick up Jane Doe to take her to a BART station parking lot to

---

[3] The victim stayed at appellant's house for the periods of time he was at work. During some of these times, appellant's mother was also home, and appellant told the victim to tell his mother she was 18 years-old. The victim, meanwhile, stayed in contact with her parents with an iPad she had brought with her, telling her mother, "I'm in a safe place," and her father, "I'm safe. I'll be home soon."

[4] The victim's father picked her up at a nearby convenience store in the afternoon of April 25, 2012. The next day, he found on the victim's iPad a photograph of her with her breasts exposed, as well as appellant's name and address, which he provided to the police. He also showed police the emails appellant and the victim had exchanged. At trial, he testified that his daughter had problems with honesty, had previously run away, and had been cutting school. Similarly, the victim's mother testified that she had recently had some problems with her daughter, including problems with her lying.

3

engage in sex. Appellant had met Jane Doe on the internet when she was 14 years-old and they had twice before engaged in sexual intercourse. On this night, after arriving at the BART station, he parked his vehicle and asked Jane Doe "to have sexual intercourse with him and his friend." After Jane Doe denied his request, appellant got out of the vehicle and demanded that she do the same. He then told her, "You can either walk home or you can give both of us oral sex." At this point, he forced Jane Doe to orally copulate him by grabbing her head and forcing it down towards his penis. When she started to cry, appellant slapped her multiple times. Jane Doe then tried to leave, at which point appellant shoved her to the ground and kicked her repeatedly.

According to a recorded statement appellant made to police following his 2004 arrest: "[Jane Doe and I] have done this at the BART station before . . . so we started doing it and then she stopped and got up and started walking away and I asked her like what was wrong and she [said] 'I'm just gonna go home.' " "I don't think I kicked her. I mean, maybe." "I put her against the wall but I didn't like force her down. I kinda like . . . guided her. But like, I mean, there was a little fight because that's like what we planned on doing." "I pulled my penis out . . . and then I . . . grabbed her head and put it down. She opened her mouth. It's not like I . . . forced my penis in." "I . . . ran up to her and then pushed her to the ground and then maybe . . . I'm not sure if I kicked her."

On May 28, 2013, the jury found appellant guilty of 31 of the 32 charged offenses.[5] On August 30, 2013, the trial court denied probation and sentenced appellant to a total prison term of fourteen years, eight months. Specifically, as to count three, the court imposed the middle term of three years; as to counts 8, 14, 17, 22, 25, 30 and 32, the court imposed consecutive terms of one year (one-third the middle term); as to counts 6, 11, 13, 16, 21, 24 and 28, the court imposed consecutive terms of eight months; and as to the remaining 16 counts (1-2, 5, 7, 9-10, 12, 15, 18-20, 23, 26-27, 29, 31), the court imposed concurrent terms. A timely notice of appeal was filed on October 16, 2013.

---

[5] Prior to the verdict, the trial court granted appellant's motion to dismiss count four.

4

## DISCUSSION

Appellant raises three primary arguments on appeal. First, appellant challenges the sufficiency of the evidence to support seven counts of committing a lewd act upon a child age 15, in violation of section 288, subdivision (c)(1). Second, he challenges as prejudicial error the trial court's admission of criminal propensity evidence pursuant to Evidence Code sections 1101 and 1108. Finally, he challenges the court's decision to impose concurrent sentences for eleven lewd-act counts rather than staying these sentences pursuant to section 654. We address each argument in turn below.

### I. Sufficiency of the Evidence to Support Seven Counts of Committing a Lewd Act Upon Child Age 15.

Appellant challenges the sufficiency of the evidence to support his conviction on seven counts of committing a lewd act upon a child age 15 in violation of section 288, subdivision (c)(1).[6] Appellant reasons that the only evidence offered to prove these acts was the victim's testimony and statements to police, which lacked the requisite specificity to support his conviction on these counts.[7]

---

[6]     Section 288 provides in relevant part as follows:
"(a) Except as provided in subdivision (i), any person who willfully and lewdly commits any lewd or lascivious act, including any of the acts constituting other crimes provided for in Part 1, upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child, is guilty of a felony and shall be punished by imprisonment in the state prison for three, six, or eight years. [¶] . . . [¶]
"(c)(1) Any person who commits an act described in subdivision (a) with the intent described in that subdivision, and the victim is a child of 14 or 15 years, and that person is at least 10 years older than the child, is guilty of a public offense and shall be punished by imprisonment in the state prison for one, two, or three years, or by imprisonment in a county jail for not more than one year. In determining whether the person is at least 10 years older than the child, the difference in age shall be measured from the birth date of the person to the birth date of the child."

[7]     Appellant was convicted of eleven counts of committing a lewd act upon a child age 15, in violation of section 288, subdivision (c)(1). Appellant does not challenge the sufficiency of the evidence to support four of these eleven counts.

5

When a defendant challenges the sufficiency of the evidence, the reviewing court must examine the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence from which the jury could find the defendant guilty beyond a reasonable doubt. (*People v. Johnson* (1980) 26 Cal.3d 557, 576-77.) Substantial evidence – meaning, evidence that is reasonable, credible and of solid value – must support each essential element of an offense. A judgment of conviction will not be set aside for insufficiency of the evidence to support the jury's verdict unless it is clearly shown there is no basis on which the evidence can support the jury's conclusion. (Ibid.)

In determining whether substantial evidence exists, we do not reweigh the evidence, resolve conflicts in the evidence or reevaluate the credibility of witnesses. (*People v. Jones* (1990) 51 Cal.3d 294, 314 (*Jones*); see also *People v. Cortes* (1999) 71 Cal.App.4th 62, 71.) "Although it is the duty of the [trier of fact] to acquit a defendant if it finds that circumstantial evidence is susceptible of two interpretations, one of which suggests guilt and the other innocence [citations], it is the [trier of fact], not the appellate court which must be convinced of the defendant's guilt beyond a reasonable doubt. ' "If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment." ' " (*People v. Bean* (1988) 46 Cal.3d 919, 932-933.)

In assessing the sufficiency of the evidence in child molestation cases, our Supreme Court has acknowledged these cases "frequently involve difficult, even paradoxical, proof problems." (*Jones, supra,* 51 Cal.3d at p. 305.) For example, children molested over a substantial period of time by an adult residing in their home may have "no practical way of recollecting, reconstructing, distinguishing or identifying by 'specific incidents or dates' all or even any such incidents." (*Ibid.*) The Legislature reacted to these proof problems in child molestation cases in part by enacting section 288.5 in 1989, which punishes a continuous course of sexual abuse rather than a

particular incident.[8] (*People v. Cortes, supra,* 71 Cal.App.4th at p. 75 ["the statute punishes repetitive activity as a *course of conduct*, defined as at least three acts over at least three months"].) This statute provides, among other things, that the jury need not unanimously agree "on which acts constitute the requisite number" as long as it unanimously agrees that at least three acts occurred within the three-month period. (*Jones, supra,* 51 Cal.3d at p. 310.) Appellant was not charged with violating this statute.

  In a further effort to address problems of proof in child molestation cases, our Supreme Court has also designed an evidentiary standard to more appropriately balance defendants' right to fair notice of the charges and to a reasonable opportunity to defend against those charges with the State's need to ensure that child molesters are not immunized from substantial criminal liability merely because their victims, who are often quite young, are unable to recall precise details concerning the incidents of abuse. (*Jones, supra,* 51 Cal.3d at pp. 305, 315-316.) Under this evidentiary standard, a child victim's "generic" testimony may be sufficient to support a conviction for sexual abuse

---

[8]  Section 288.5 provides as follows:

"(a) Any person who either resides in the same home with the minor child or has recurring access to the child, who over a period of time, not less than three months in duration, engages in three or more acts of substantial sexual conduct with a child under the age of 14 years at the time of the commission of the offense, as defined in subdivision (b) of Section 1203.066, or three or more acts of lewd or lascivious conduct as defined in Section 288, with a child under the age of 14 years at the time of the commission of the offense is guilty of the offense of continuous sexual abuse of a child and shall be punished by imprisonment in the state prison for a term of 6, 12, or 16 years.

"(b) To convict under this section the trier of fact, if a jury, need unanimously agree only that the requisite number of acts occurred not on which acts constitute the requisite number.

"(c) No other act of substantial sexual conduct, as defined in subdivision (b) of Section 1203.066, with a child under 14 years of age at the time of the commission of the offenses, or lewd and lascivious acts, as defined in Section 288, involving the same victim may be charged in the same proceeding with a charge under this section unless the other charged offense occurred outside the time period charged under this section or the other offense is charged in the alternative. A defendant may be charged with only one count under this section unless more than one victim is involved in which case a separate count may be charged for each victim."

so long as the testimony describes: (1) "the *kind of act or acts committed* with sufficient specificity, both to assure that unlawful conduct indeed has occurred and to differentiate between the various types of proscribed conduct (e.g. lewd contact, intercourse, oral copulation or sodomy)"; (2) "the *number of acts* committed with sufficient certainty to support each of the counts alleged in the information or indictment (e.g., 'twice a month' or 'every time we went camping'); and (3) "*the general time period* in which these acts occurred (e.g., 'the summer before my fourth grade,' or 'during each Sunday morning after he came to live with us'), to assure the acts were committed within the applicable limitation period." (*Jones, supra,* 51 Cal.3d at p. 316; see also *People v. Matute* (2002) 103 Cal.App.4th 1437, 1444-1445.)

Here, appellant acknowledges the general principle that a jury may rely upon a minor's "generic" testimony to convict a child molester if it meets the requirements set forth in *Jones, supra,* 51 Cal.3d 294. However, he insists this principle only applies in "those cases in which a resident child molester engages in a continuing course of conduct [in violation of section 288.5], rendering it impossible for the minor to provide specific testimony recounting those crimes." Appellant reasons that the rationale for allowing "generic" testimony in cases involving section 288.5 crimes (to wit, providing the victim the benefit of a lesser degree of proof while providing the defendant the offsetting benefit of subjecting him to only one conviction for a continuous course of conduct) does not apply where, as here, the criminal conduct lasted just four days and the victim was able to provide quite specific testimony with respect to most of the charged offenses. Appellant thus concludes that, while the victim's testimony may suffice to support his conviction on seven counts of oral copulation, seven counts of unlawful intercourse and three counts of digital penetration, her more generic testimony with respect to the seven section 288, subdivision (c)(1) counts was not sufficient. We disagree.

As an initial matter, appellant cites no authority for his theory that generic testimony is legally insufficient to support a conviction under section 288, subdivision (c)(1), in non-resident sexual molestation cases or in cases, like this one, where the victim provides specific testimony with regard to certain counts. Nor does *Jones*, *supra,* 51

8

Cal.3d 294, draw any such distinction or limitation. Rather, the *Jones* decision employs language encompassing all child molestation cases, whether the molester resides with the child or elsewhere and whether the child is five, fifteen or some age in between: "[T]he particular details surrounding a child molestation charge are not elements of the offense and are unnecessary to sustain a conviction. [Citations.] [¶] The victim . . . must describe *the kind of act or acts committed* with sufficient specificity . . . . Moreover, the victim must describe the *number of acts* committed with sufficient certainty to support each of the counts alleged in the information . . . . Finally, the victim must be able to describe *the general time period* in which these acts occurred . . ., to assure that acts were committed within the applicable limitation period. Additional details regarding the time, place or circumstances of the various assaults may assist in assessing the credibility or substantiality of the victim's testimony, but are not essential to sustain a conviction." (*Jones, supra,* 51 Cal.3d at pp. 315-316, 318.)

Thus, as this language reflects, among the concerns addressed by *Jones* was whether a molester had continuous access to the victim, such that the victim's ability to recall and distinguish among different acts of molestation may have been impacted. (*Jones, supra,* 51 Cal.3d at pp. 299, 322 [noting victim credibility is often the "true issue" in molestation cases].) At the same time, contrary to appellant's suggestions, the *Jones* court was not concerned only with molesters who actually resided with their victims, or engaged in sexual acts with victims so young that the victims' ability to recall specific acts was wholly impaired.[9]

---

[9] The case law is in accord. For example, in *People v. Matute, supra,* 103 Cal.App.4th 1437, our colleagues in the Court of Appeal, Second District, Division Four, held that a child victim's generic testimony otherwise meeting the *Jones* standard was sufficient to support a conviction where the charged offense was rape under section 261 rather than continuous sexual abuse under section 288.5. (*People v. Matute, supra,* 103 Cal.App.4th at pp. 1444, 1445 ["we reject appellant's suggestion that generic testimony is acceptable only when a defendant is charged under a 'course of conduct' statute but not otherwise"].) The *People v. Matute* court also rejected the argument that generic testimony is only permitted in cases involving very young victims, noting that "*even a mature victim might understandably be hard pressed to separate particular incidents of*

9

Even more importantly, however, we are not convinced the victim's testimony in this case regarding the challenged seven counts was in fact "generic," as the term is used in the relevant case law. To the contrary, the evidence presented at trial demonstrated appellant repeatedly sexually abused the victim during a four-day period in late April 2012. Specifically, as stated above, after appellant met and chatted with the victim, age 15, on the internet, he picked her up in the early morning hours of April 21 and took her back to his home, where she stayed as his guest for several days. According to the victim's testimony, appellant kissed her and fondled her breasts in numerous rooms of the house during the course of these four days (including the bathroom, guestroom, videogame room, and his bedroom). These acts were in addition to the numerous other more serious sex acts the pair engaged in that are not subject to challenge on appeal. In addition, appellant himself acknowledged that the pair cuddled each night before or after engaging in the other sex acts. This evidence, which includes at least seven acts of inappropriate touching, cuddling and kissing that occurred in conjunction with appellant's more serious sex acts, was sufficient to prove seven counts under section 288, subdivision (c)(1). Nothing more was required. (See *Jones, supra,* 51 Cal.3d at pp. 315-316, 318.)

Accordingly, viewing the evidence, as we must, in the light most favorable to the People, we affirm appellant's conviction. Simply put, the jury had a reasonable basis on this record for finding beyond a reasonable doubt that appellant committed the charged lewd acts, such that reversal is unwarranted.

## II. Admission of Evidence of Appellant's Propensity to Commit Sex Crimes.

Appellant also challenges one of the trial court's evidentiary rulings. Over appellant's objection, the trial court admitted evidence relating to his prior commission of sexual offenses against a minor. This evidence, set forth above, showed that, in 2004,

---

*repetitive molestation by time, place or circumstance.*" (*Id.* at p. 1445.) "The fact [that the victim] was 15 and 16 [rather than under 14] at the time of the crimes involved here makes little difference with regard to her inability to differentiate among the continual rapes perpetrated by defendant." (*Id.* at p. 1447.)

appellant entered a no contest plea to violations of section 288a, subdivision (b)(1) and section 265.1, subdivision (d), following his sexual assault of a fourteen-year-old girl he had initially met on the internet before beginning a sexual relationship with her. To summarize, after appellant and this minor, Jane Doe, had begun their relationship, he and a friend drove her to a BART station parking lot late one night, where he forced her to orally copulate him, before slapping her, shoving her to the ground and kicking her.

The trial court found this evidence admissible under both Evidence Code sections 1101 and 1108, subdivision (b) (sections 1108 and 1101(b)), to prove appellant's predisposition to commit the charged offenses, as well as his intent, motive, and knowledge of the victim's age. In addition, the trial court applied Evidence Code section 352 (section 352), requiring balancing of the probative value of this evidence versus any undue prejudice, before deciding on its admission. On appeal, appellant contends the court's ruling constituted prejudicial error, requiring reversal. The following legal principles apply.

Section 1101, subdivision (a) provides: "Except as provided in this section and in Sections . . . 1108 . . . , evidence of a person's character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion." Subdivisions (b) and (c) of the statute permit admission of such evidence, however, when relevant to attack or support a witness's credibility or to prove some fact other than a person's character or disposition to commit crimes, such as the person's motive, identity, intent or common scheme or plan.

Section 1108, subdivision (a) provides: "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352." Section 352, in turn, gives the trial court discretion to exclude evidence "if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption

11

of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

On appeal, we do not disturb the trial court's exercise of discretion in admitting evidence " 'unless there is a manifest abuse of that discretion resulting in a miscarriage of justice. [Citations.]' *People v. Milner* (1988) 45 Cal.3d 227, 239." (*People v. Harlan* (1990) 222 Cal.App.3d 439, 446.) Having reviewed this record, we find no such abuse of discretion.

As an initial matter, appellant asserts that section 1108 is facially unconstitutional under both state and federal law. This argument, however, is quickly rejected. Our Supreme Court, which we are bound to follow, has definitively rejected it, holding that "the trial court's discretion to exclude propensity evidence under section 352 saves section 1108 from defendant's due process challenge." (*People v. Falsetta* (1999) 21 Cal.4th 903, 917; see also *People v. Reliford* (2003) 29 Cal.4th 1007, 1016 [finding "no constitutional error" in CALJIC no. 2.50.01]. See also *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [California Supreme Court decisions are binding on lower courts under the principle of stare decisis].) In addition, courts have likewise soundly rejected defendants' equal protection challenges to this statute. (*People v. Fitch* (1997) 55 Cal.App.4th 172, 184-185 (*Fitch*); see also *People v. Falsetta, supra,* 21 Cal.4th at pp. 918-919 [noting with approval the *Fitch* court's rejection of an equal protection challenge to section 1108].) Accordingly, appellant's constitutional challenge fails and we turn to the more case-specific issue of whether the trial court properly exercised its discretion under the Evidence Code to admit the propensity evidence.

The gist of appellant's argument on this point is that, even if otherwise admissible under section 1108 (which he assumes for purposes of appeal), the trial court should have excluded this evidence under section 352 because it was substantially more prejudicial than probative. He reasons that the prior sexual assault occurred remotely in time and under different circumstances. In particular, appellant notes that the incident involving Jane Doe in 2004 involved use of force, a highly inflammatory fact of no relevance here given that the sexual acts between him and the victim were consensual and without force.

12

He further notes admission of this evidence may have increased the likelihood of the jury confusing the issues and punishing him for his prior bad acts rather than the present ones.

We reject appellant's arguments. California law is quite clear that evidence offered under section 1108 will not be excluded on the basis of section 352 unless " 'the probability that its admission will . . . create substantial danger of undue prejudice' . . . substantially outweighed its probative value concerning the defendant's disposition to commit the sexual offense or offenses with which he is charged and other matters relevant to the determination of the charge." (*People v. Soto* (1998) 64 Cal.App.4th 966, 984.) The same general rule applies under section 1101. (*People v. Thornton* (2000) 85 Cal.App.4th 44, 47-48 ["A criminal trial must always be fair. But it need not be fair in the sense of a fair fight: one in which each side has an equal chance to win. We do not handicap the parties to a criminal trial. If one side or the other has overwhelming evidence, it is allowed to use as much as it chooses, subject only to exercise of the trial court's *considerable* discretion under Evidence Code section 352"].) Here, as the trial court recognized, appellant committed the prior offenses, like those charged here, against a minor he met on the internet before meeting her in person and engaging in sexual conduct. While the first incident involved force and this incident did not, the fact remains that both victims were young teenage females sexually abused on multiple occasions by appellant. And while a number of years (to wit, eight years) passed between appellant's prior and current offense, we do not find this time period so great as to render admission of the evidence prejudicial. (See *People v. Soto, supra,* 64 Cal.App.4th at p. 991 ["the passage of a substantial length of time does not automatically render the prior incidents prejudicial"].)

Finally, the trial court instructed the jurors that "you may, but are not required to, consider that evidence for the limited purposes of deciding whether or not: [¶] The defendant was the person who committed the offenses alleged in this case; or [¶] . . . acted with the [requisite] specific intent . . . ; or [¶] . . . had a motive to commit the offenses . . . ; or [¶] . . . knew the age [of the victim] when he allegedly acted in this case; or [¶] [his] alleged actions were the result of mistake or accident[,]" or "[he] had an

13

abnormal or unnatural sexual interest in children." In addition, the court instructed the jurors to, "[i]n evaluating this evidence, consider the similarity or lack of similarity between the uncharged offenses and the charged offenses." The court's instructions protected appellant against any undue prejudice.

Under these circumstances, we conclude the prejudice presented by the evidence of appellant's prior acts of sexual abuse was not undue, but merely the type inherent in all propensity evidence. (See *People v. Soto, supra,* 64 Cal.App.4th at p. 992; cf. *People v. Harris* (1998) 60 Cal.App.4th 727, 737 ["[p]ainting a person faithfully is not, of itself, unfair"].) Our Legislature, in enacting sections 1101 and 1108, has recognized this inherent prejudice and found it insufficient alone to render propensity evidence inadmissible. (See *People v. Soto, supra,* 64 Cal.App.4th at p. 992.) We will not second-guess the Legislature's decision in this regard. Accordingly, we conclude the trial court did not abuse its discretion in admitting this evidence.[10]

### III. Imposition of Concurrent Sentences for the Section 288, subdivision (c)(1) Offenses.

Appellant's remaining argument is that the trial court erred by imposing concurrent sentences for eleven counts of committing a lewd act in violation of section 288, subdivision (c)(1), rather than staying these sentences pursuant to section 654. Section 654 provides that "[a]n act or omission that is punishable in different ways by

---

[10] Appellant makes the additional argument that the prior incident of sexual abuse of Jane Doe was not "sufficiently similar" to the current incident to permit admission of this evidence under section 1101, subdivision (b). (See *People v. Brandon* (1995) 32 Cal.App.4th 1033, 1048-1049 [to be admissible to prove intent, prior misconduct must be "sufficiently similar" to support the inference that the defendant probably harbored the same intent in both incidents].) However, we disagree based on the same reasoning set forth above – to wit, the two incidents had many similarities, including that they both involved appellant's sexual abuse of teenage females he met on the internet before engaging in sexual relationships with them despite knowing their ages. Moreover, even if we were to assume for the sake of argument that appellant's contention had merit, we would nonetheless affirm the trial court's ruling. Given our conclusion that this evidence was properly admitted under section 1108 and section 352, any error in admitting the evidence under section 1101 would necessarily be harmless. (See *People v. Branch* (2001) 91 Cal.App.4th 274, 280-281.)

different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." (§ 654.) As the California Supreme Court explains, where different provisions of law punish in different ways a defendant's single criminal act or course of criminal conduct, section 654 bars multiple punishments based upon that single act or course of conduct. (*People v. Jones* (2012) 54 Cal.4th 350, 352.) "[T]he accepted 'procedure is to sentence defendant for each count and stay execution of sentence on certain of the convictions to which section 654 is applicable.' " (*Id.* at p. 353.)

Generally, " '[w]hether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the *intent and objective* of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one.' [Citation.]" (*People v. Latimer* (1993) 5 Cal.4th 1203, 1208.) "However, the rule is different in sex crime cases. Even where the defendant has but one objective — sexual gratification — section 654 will not apply unless the crimes were either incidental to or the means by which another crime was accomplished. (*People v. Perez* (1979) 23 Cal.3d 545, 553 [153 Cal.Rptr. 40, 591 P.2d 63]; e.g., . . . *People v. Greer* (1947) 30 Cal.2d 589, 604 [184 P.2d 512] [removal of victim's underclothing was merely incidental to subsequent rape and did not warrant separate punishment] . . . .) [¶] But, section 654 does not apply to sexual misconduct that is 'preparatory' in the general sense that it is designed to sexually arouse the perpetrator or the victim. [Citation.] That makes section 654 of limited utility to defendants who commit multiple sex crimes against a single victim on a single occasion. As our Supreme Court has stated, '[M]ultiple sex acts committed on a single occasion can result in multiple statutory violations. Such offenses are generally 'divisible' from one another under section 654, and separate punishment is usually allowed. [Citations.]' (*People v. Scott* (1994) 9 Cal.4th 331, 344, fn. 6 [36 Cal.Rptr.2d 627, 885 P.2d 1040].) If the rule were otherwise, 'the clever molester could violate his victim in numerous lewd ways, safe in the knowledge that he could not be

15

convicted and punished for every act.' (*Id.* at p. 347.) Particularly with regard to underage victims, it is inconceivable the Legislature would have intended this result." (*People v. Alvarez* (2009) 178 Cal.App.4th 999, 1006-1007.)

Here, appellant argues that section 654 bars the imposition of concurrent sentences for the eleven lewd-act counts because there is "no evidence that any of [these] eleven violations of section 288, subdivision (a) involved separate intents, or occurred on 'separate occasions' from the other seventeen sex acts [for which he was sentenced]. On the contrary, all the evidence demonstrated that any kissing or fondling [to wit, the acts underlying the section 288, subdivision (a) offenses] was preparatory to the ensuing sex acts, without any interval of time or opportunity for reflection."

We reject appellant's argument based upon the authority set forth above. Appellant does not argue or offer any evidence that his crimes "were either incidental to or the means by which another crime was accomplished," which, as explained above, is one of the only situations in which a defendant convicted of sex crimes may take advantage of section 654 to lessen his total sentence. (*People v. Alvarez, supra,* 178 Cal.App.4th at p. 1006.) Nor could appellant do so. The record makes clear that appellant's sexual misconduct underlying the concurrent sentences – to wit, kissing and fondling minor prior to the more serious sex acts of intercourse, digital penetration and oral copulation – was " 'preparatory' in the general sense that it is designed to sexually arouse the perpetrator or the victim." (*People v. Alvarez, supra,* 178 Cal.App.4th at p. 1006.) As such, section 654 does not apply. (*Ibid.*)

## DISPOSITION

The judgment is affirmed.

_____
Jenkins, J.

We concur:

_____
Pollak, Acting P. J.

_____
Siggins, J.

17