Filed 3/24/16  P. v. Dearing CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G050174 |
| v. | (Super. Ct. No. 12WF0026) |
| MICHAEL ADAM DEARING, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Sheila F. Hanson, Judge.  Affirmed.

Ron Boyer, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Scott C. Taylor, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

INTRODUCTION

Defendant Michael Adam Dearing appeals from a judgment entered after a jury found him guilty of two counts of felony aggravated assault on a child and three counts of committing a lewd or lascivious act on a child under 14 years old in violation of Penal Code section 288, subdivision (b)(1). (All further statutory references are to the Penal Code unless otherwise specified.) As to the three counts of committing a lewd or lascivious act on a child under 14 years old, he contends insufficient evidence showed any sexual touching was accomplished by force, duress, or menace, or any "other factor[]" of section 288, subdivision (b); or that "more than two counts" (boldface omitted) were committed. He also contends the trial court erred by giving "conflicting instructions on the meaning of 'force'" and Dearing's trial counsel was ineffective for failing to request clarifying instructions as to that word's meaning.

We affirm. As to the three counts of committing a lewd or lascivious act on a child under 14 years old, substantial evidence showed Dearing accomplished two of those counts by force and all three counts by duress within the meaning of section 288, subdivision (b)(1). We also reject Dearing's contention of instructional error; as a result, we do not need to address his argument about ineffectiveness of counsel.

FACTS

In 2000, six- or seven-year-old K. was a first grader who lived with her older half brothers and their father in a house in Westminster. K. was adopted by her half sister (who did not live at the house) and K.'s half siblings' father when she was a baby because K.'s mother had health problems, was addicted to crack cocaine, and had a drinking problem. K.'s brothers' friends, including 18-year-old Dearing, were allowed to hang out at the house.

Beginning during K.'s first-grade year and continuing through her third-grade year, Dearing molested K. At trial, the prosecutor asked K. how the

2

molestation would happen. K. testified that on at least four occasions,[1] Dearing would approach her when her brothers and other friends were not around, take off her pants, sodomize her, orally copulate her, and have her orally copulate him.

On two of those four occasions,[2] the molestation would be preceded by Dearing applying force to K., in the form of tugging at her arm and/or shirt, to move her to a different place, where he would molest her. Specifically, Dearing once tugged at K. to move her from her brother's bedroom to the bathroom where he molested her. He also once tugged at K. to move her from inside the house to the detached garage where he molested her. K. described the tugs as Dearing grabbing her arms and tugging at her or pulling on her shirt hard enough to move her. K. testified that on both of those occasions, she had grabbed onto the doorframe in an effort to resist being moved by Dearing but was unsuccessful at preventing him from moving her.

The two other occasions of molestation described by K. did not involve Dearing applying any tugging or effort to move K. She testified that on one such occasion, she was already in the garage at which time Dearing approached her and molested her. K. testified that a fourth incident of molestation occurred after Dearing found K. alone in her bedroom and molested her there.

K. did not scream because she was scared. On more than one occasion, Dearing told K. that if she told someone about what he was doing to her, no one would believe her and would think she was lying because she was "just a kid." She bled every time that Dearing sodomized her.

K. did not tell anyone about the molestations because she was scared. "Around first through third grade," K. noticed pinworms in her stool and feared she got

---

[1] K. told a detective during an interview that the molestations occurred four or five times.

[2] K. did not testify regarding the chronological order of the four instances of molestation.

them from Dearing sodomizing her. She feared that the pinworms would eat the inside of her stomach and she would die. Finally, when K. was 17 years old, and had lived with the fear of what her untreated pinworm condition was doing to her, she told family members about what Dearing had done.

In a police interview, Dearing initially admitted to engaging in "just oral sex" with K. on two occasions in her brother's bedroom upstairs. Dearing explained he was high on dope. He admitted having her perform oral sex on him and performing oral sex on her. At the end of the police interview, Dearing admitted to sodomizing K.

PROCEDURAL HISTORY

Dearing was charged in an information with (1) one count of felony aggravated sexual assault of a child by committing an act of sodomy, in violation of sections 269, subdivision (a)(3) and 286; (2) one count of felony aggravated sexual assault of a child by committing an act of oral copulation, in violation of sections 269, subdivision (a)(4) and 288a; and (3) three felony counts of committing a lewd or lascivious act on a child under 14 years old, in violation of section 288, subdivision (b)(1). As to the three counts of committing a lewd or lascivious act on a child under 14 years of age in violation of section 288, subdivision (b)(1), the information alleged Dearing had substantial sexual conduct with K., who was under 14 years old, in the forms of oral copulation and sodomy.

The jury found Dearing guilty of all counts and enhancement allegations. The trial court sentenced Dearing to a total prison term of 30 years to life by imposing two consecutive terms of 15 years to life for the convictions of aggravated sexual assault of a child. (Those sentences are not issues before us.) The court also sentenced Dearing to three consecutive six-year prison terms for his three convictions of committing lewd or lascivious acts on a child in violation of section 288, subdivision (b)(1), to run consecutively to the 30-year-to-life term. Dearing appealed.

4

DISCUSSION

I.

SUBSTANTIAL EVIDENCE SUPPORTED DEARING'S CONVICTIONS FOR THREE COUNTS OF COMMITTING A LEWD OR LASCIVIOUS ACT ON A CHILD UNDER 14 YEARS OF AGE IN VIOLATION OF SECTION 288, SUBDIVISION (b)(1).

In his opening brief, Dearing argues his convictions for three counts of committing a lewd or lascivious act on a child under 14 years of age in violation of section 288, subdivision (b)(1) were not supported by substantial evidence. Dearing argues insufficient evidence showed he used force, duress, menace, or "any of the other factors that would bring an act within the terms of subdivision (b) of section 288," in the commission of those offenses.

For the reasons we will explain, substantial evidence showed that on two occasions, Dearing used force within the meaning of section 288, subdivision (b)(1), by tugging at K., in the commission of a lewd or lascivious act on her. Both times, K. attempted to resist Dearing's efforts to move her by grabbing onto the doorframe before succumbing to Dearing's force and being moved, in one instance to the bathroom and the other to the garage, where she was molested. Sufficient evidence also supported a finding that Dearing used duress, within the meaning of section 288, subdivision (b)(1), in the commission of all three counts of committing a lewd or lascivious act.

A.

*Standard of Review*

"When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the

5

defendant guilty beyond a reasonable doubt. [Citation.] . . . We presume in support of the judgment the existence of every fact the trier of fact reasonably could infer from the evidence. [Citation.] If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding. [Citation.] A reviewing court neither reweighs evidence nor reevaluates a witness's credibility. [Citation.]" (*People v. Lindberg* (2008) 45 Cal.4th 1, 27.) The testimony of a single witness, unless physically impossible or inherently improbable, is sufficient to support a conviction. (Evid. Code, § 411; *People v. Young* (2005) 34 Cal.4th 1149, 1181.)

B.

*Substantial Evidence Showed on Two Occasions, Dearing Used Force, Within the Meaning of Section 288, Subdivision (b)(1), to Perform Lewd or Lascivious Acts on K.*

Section 288 provides in relevant part: "(a) Except as provided in subdivision (i), any person who willfully and lewdly commits any lewd or lascivious act, including any of the acts constituting other crimes provided for in Part 1, upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child, is guilty of a felony and shall be punished by imprisonment in the state prison for three, six, or eight years. [¶] (b)(1) Any person who commits an act described in subdivision (a) *by use of force*, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person, is guilty of a felony and shall be punished by imprisonment in the state prison for 5, 8, or 10 years." (Italics added.)

In his opening brief, Dearing concedes he committed lewd or lascivious acts on K. in violation of section 288, subdivision (a). He argues, however, insufficient evidence showed he ever did so "by use of force, violence, duress, menace, or fear of

6

immediate and unlawful bodily injury on the victim or another person" within the meaning of section 288, subdivision (b)(1). He argues K. testified that "[h]e would tug" at her arm or shirt but did not drag her to move her to a place where he would molest her and, thus, her testimony was insufficient to show the requisite force under section 288, subdivision (b)(1).

For purposes of section 288, subdivision (b)(1), "[f]orce . . . means physical force that is "'substantially different from or substantially greater than that necessary to accomplish the lewd act itself."'" [Citation.]" (*People v. Alvarez* (2009) 178 Cal.App.4th 999, 1004 (*Alvarez*).) The amount of force used, however, may be relatively minor, such as slightly pushing down the victim's back during oral copulation. (*People v. Pitmon* (1985) 170 Cal.App.3d 38, 48.) In *Alvarez,* a panel of this court held that "acts of grabbing, holding and restraining that occur in conjunction with the lewd acts themselves" satisfy the force requirement under section 288, subdivision (b)(1) because they are "'different from and in excess of the type of force which is used in accomplishing similar lewd acts with a victim's consent.' [Citation.]" (*Alvarez*, *supra*, at p. 1005.)

K. testified about four instances of molestation, two of which involved Dearing applying force, in the form of tugging at her arm or shirt. K. testified that on each of the two occasions when Dearing used force, he did so to move her to a more secluded location where he would molest her. On one such occasion, he tugged at K. to move her from her brother's bedroom to the bathroom, and on the other occasion, he tugged at her to move her from inside the house to the garage.

Dearing argues the tug was not force, but merely "the most gentle kind of impetus to move." He further argues, "[w]hile a tug of this kind is force in a Newtonian sense, it is not force substantial enough to qualify as 'force' within the meaning of section 288. The evidence did not show that K[.] was physically compelled to move from one room to the next." Dearing's argument is without merit.

7

K. testified about the nature of the tugs that had occurred on those two instances as follows: (1) "he would grab my arms so that would move me. The tugs would be regular normal tugs where, yes, I would move"; (2) it was a "harder tug" than just pulling on a shirt; (3) Dearing also pulled on her shirt hard enough to move her; and (4) in both instances, K. grabbed onto the doorframe to try to keep Dearing from moving her, but he would tug at her to pull her away from the doorframe and successfully move her. Substantial evidence supported the finding that Dearing's tugs constituted force within the meaning of section 288, subdivision (b)(1).

In his opening brief, Dearing cites *People v. Schulz* (1992) 2 Cal.App.4th 999, 1004 (*Schulz*), in which the appellate court held, "[s]ince ordinary lewd touching often involves some additional physical contact, a modicum of holding and even restraining cannot be regarded as substantially different or excessive 'force.'" In *Alvarez*, *supra*, 178 Cal.App.4th 999, however, a panel of this court concluded that *Schulz* is "wrong" (*id.* at p. 1004), noting, inter alia, "the *Schulz* rule fails to recognize a 'defendant may fondle a child's genitals without having to grab the child by the arm and hold the crying victim in order to accomplish the act. Likewise, an assailant may achieve oral copulation without having to grab the victim's head to prevent the victim from resisting'" (*id.* at pp. 1004-1005). Other courts have reached the same conclusion, and rejected *Schulz*. (See *People v. Bolander* (1994) 23 Cal.App.4th 155, 160 [violation of section 288, subdivision (b) found where "force defendant used on [the victim] to accomplish the act of sodomy is no greater than that used to hold a crying victim who was trying to escape in a corner or that used to pull and hold a victim's shoulders to prevent her from resisting"]; *People v. Neel* (1993) 19 Cal.App.4th 1784, 1790 ["'defendant's acts of forcing the victim's head down on his penis when she tried to pull away and grabbing her wrist, placing her hand on his penis, and then 'making it go up and down' constitute force within the meaning of [section 288,] subdivision (b) in that defendant applied force in order to accomplish the lewd acts without the victim's

8

consent"]; *People v. Babcock* (1993) 14 Cal.App.4th 383, 387-388 [grabbing the victim's hand and placing it on the defendant's penis was evidence of force under section 288, subdivision (b)].)

C.

*Substantial Evidence Also Showed That Dearing Used Duress, Within the Meaning of Section 288, Subdivision (b)(1) to Molest K. on at Least Four Occasions.*

As explained, substantial evidence supported Dearing's conviction for two counts of committing a lewd or lascivious act by force within the meaning of section 288, subdivision (b)(1). K. also testified about two other instances of molestations. She stated that another molestation occurred in the garage when she was already in the garage. She also testified that on one occasion, she was in her bedroom when Dearing appeared and committed sexual offenses against her.

Duress, within the meaning of section 288, subdivision (b)(1), means "'"'a direct or implied threat of force, violence, danger, *hardship* or retribution sufficient to coerce *a reasonable person of ordinary susceptibilities* to (1) perform an act which otherwise would not have been performed or, (2) acquiesce in an act to which one otherwise would not have submitted.'"' [Citation.] Because duress is measured by a purely objective standard, a jury could find that the defendant used threats or intimidation to commit a lewd act without resolving how the victim subjectively perceived or responded to this behavior." (*People v. Soto* (2011) 51 Cal.4th 229, 246, fn. omitted.) "'The total circumstances, including the age of the victim, and [her] relationship to defendant are factors to be considered in appraising the existence of duress.' [Citation.] Other relevant factors include threats to harm the victim, physically controlling the victim when the victim attempts to resist, and warnings to the victim that revealing the molestation would result in jeopardizing the family. [Citations.] [¶] The fact that the victim testifies the defendant did not use force or threats does not require a finding of no

9

duress; the victim's testimony must be considered in light of her age and her relationship to the defendant." (*People v. Cochran* (2002) 103 Cal.App.4th 8, 13-14.)

Here, substantial evidence showed that as to all three counts of lewd or lascivious acts on a child under 14 years old in violation of section 288, subdivision (b)(1), Dearing accomplished committing those acts by use of duress. K. was only six or seven years old and in the first grade and Dearing was an 18-year-old, trusted family friend, who was permitted to hang out with K.'s brothers in the house. The significant age difference between K. and Dearing necessarily resulted in a significant difference in physical size.

Substantial evidence showed K. reasonably perceived Dearing as an authority figure given his relationship with her family. He was permitted to be left alone with K. Dearing's admonishment to K. that she should not tell anyone about the molestation, because no one would believe "just a kid," hit its mark in persuading K. of her powerlessness in resisting the molestations. Dearing successfully molested K. in her own house and either molested her in the room where he found her or moved her to a more secluded location where he would commit lewd or lascivious acts. Substantial evidence showed that the evidence supported the jury's finding that Dearing successfully applied duress to accomplish all three counts of lewd or lascivious acts in violation of section 288, subdivision (b)(1) against K.

## II.

### THE TRIAL COURT DID NOT ERR BY FAILING TO FURTHER INSTRUCT THE JURY ON THE MEANING OF THE WORD "FORCE."

Dearing does not challenge any of the jury instructions as containing an incorrect statement of the law. Instead, Dearing contends he "was denied due process of law because the court gave conflicting instructions on the meaning of 'force'" and, consequently, his trial counsel was ineffective because he failed to request clarifying

10

instructions accordingly. Because the instructions, read as a whole, clearly instruct the jury on the correct standards, we find no error.

The jury was instructed with CALCRIM No. 1123, which, as modified, stated that an element of the crime of aggravated sexual assault of a child under 14 years of age, as "charged in Count 1," is that the defendant committed "sodomy by force, fear or threats on another person." In that instruction, the jury was told "[t]o decide whether the defendant committed sodomy by force, fear or threats, please refer to the separate instructions that I will give you on that crime." CALCRIM No. 1030 was that separate instruction, referred to by the trial court, regarding sodomy by force, fear, or threats, which stated, inter alia, that "[a]n act is *accomplished by force* if a person uses enough physical force to overcome the other person's will."

The jury was also given CALCRIM No. 1111, which, as modified, stated that Dearing was "charged in Counts 3, 4, and 5 with a lewd or lascivious act by force or fear on a child under the age of 14 years in violation of Penal Code section 288(b)(1)." It stated, "[t]o prove that the defendant is guilty of this crime, the People must prove," inter alia, "[i]n committing the act, the defendant used force, violence, duress, menace, or fear of immediate and unlawful bodily injury to the child or someone else." The instruction also stated, "[t]he *force* used must be substantially different from or substantially greater than the force needed to accomplish the act itself."

The jury was further instructed with CALCRIM No. 915 that "Simple Assault" is a lesser crime to all the charged offenses. The instruction stated the elements of simple assault include that "[t]he defendant did an act that by its nature would directly and probably result in the application of force to a person" and "[w]hen the defendant acted, he had the present ability to apply force to a person." The instruction also stated, "[t]he terms *application of force* and *apply force* mean to touch in a harmful or offensive manner. The slightest touching can be enough if it is done in a rude or angry way. Making contact with another person, including through his or her clothing, is enough.

11

The touching does not have to cause pain or injury of any kind." CALCRIM No. 915 further stated: "No one needs to actually have been injured by defendant's act. But if someone was injured, you may consider that fact, along with all the other evidence, in deciding whether the defendant committed an assault, and if so, *what kind of assault it was*." (Italics added.)

Dearing argues that a clarifying instruction stating the term "force" had different meanings in the context of different offenses was necessary, particularly given that the jury was also provided the standard instruction to consider all the instructions together. Dearing's argument is without merit. The instructions, when read together, express the point that the word "force" has a different meaning in the context of different offenses, thereby rendering another instruction on the subject superfluous. We reject Dearing's argument that CALCRIM No. 915's statement instructing the jury to consider evidence of any injury along with the other evidence, in determining "what kind of assault it was," created confusion regarding the appropriate definition of force that applied in the context of aggravated sexual assault of a child under 14 years of age versus in the context of simple assault. That statement did not conflate the respective definitions of force applicable to aggravated sexual assault of a child under 14 years old and simple assault, respectively, but only generally informed the jury that evidence of injury could be considered, along with all the other evidence, in determining the type of crime committed, if any.

Because we find no instructional error, we do not address Dearing's contention he received ineffective assistance of counsel.

DISPOSITION

The judgment is affirmed.


FYBEL, J.

WE CONCUR:


O'LEARY, P. J.


THOMPSON, J.